# UNITED STATES DISTRICT COURT

# IN THE WESTERN DISTRICT OF MICHIGAN

Benjamin Stanley,

        Plaintiff,

v.

County of Kalamazoo;
Kalamazoo County Sheriff's Office;
Kalamazoo County Animal Services and Enforcement;
Kalamazoo Sheriff's Office Public Records Department/Division;
Kalamazoo County Board of Commissioners;
Sheriff Richard C. Fuller III, individually and in his official capacity;
Undersheriff VanDyken, individually and in his official capacity;
official capacity;
Deputy Randall, individually and in his official capacity;
Sergeant Zimmer, individually and in his official capacity;
Deputy Kelly, individually and in his official capacity;
Steve Lawrence, individually and in his official capacity;
Jim Rutherford, individually and in his
official capacity,

        Defendants.

Case No. 23-cv-684
Hon.

---

Eric D. Delaporte (P69673)
DELAPORTE LYNCH, PLLC
Attorney for Plaintiff
210 State St., Suite B
Mason, MI 48854
(517) 999-2626

---

## COMPLAINT

      NOW COMES Plaintiff Benjamin Stanley (hereinafter "Stanley" or "Plaintiff"), by and through his attorney Eric Delaporte of Delaporte Lynch, PLLC, and files his Complaint under 42 U.S.C. § 1983 for violations of the First Amendment, Fourth Amendment, Fourteenth Amendment, 42 U.S.C. § 1985 for conspiracy, False Arrest, and False Imprisonment.  Plaintiff

also brings this Complaint under Michigan law for violations of the Persons with Disabilities Civil Rights Act ("PWDCRA") (MCL 37.1602) and intentional infliction of emotional distress.

## GENERAL ALLEGATIONS

### JURISDICTION AND VENUE

1. This Complaint is brought under 42 U.S.C. § 1983 for violations of the First, Fourth, and Fourteenth Amendment; 42 U.S.C. § 1985 for conspiracy; MCL 37.1602 for retaliation and intimidation under the PWDCRA; and intentional infliction of emotional distress, all of which occurred within the boundaries of this Honorable Court's jurisdiction and in which Defendants, public servants, a public service, and public entities, reside.  Thus, venue and jurisdiction are proper in this Honorable Court pursuant to 28 U.S.C. §§ 1331, 1343, 1367, MCL 600.1621, and Michigan common law.

2. Governmental Defendants named herein, on information and belief, are County of Kalamazoo, Michigan, entities and headquartered in Kalamazoo, Michigan, and are situated in this Honorable Court's venue and subject to its jurisdiction for the Counts cited herein.

3. Individual Defendants named herein, on information and belief, live and work within the venue of this Honorable Court and subject to its jurisdiction for the Counts cited herein.

4. Defendant Sheriff Richard C. Fuller III is an individual who resides near or within Kalamazoo, Michigan and is employed as the Kalamazoo County Sheriff.

5. Defendant Undersheriff VanDyken is an individual who resides near or within Kalamazoo, Michigan, and is employed as the Kalamazoo County Undersheriff.

6. Defendant Deputy Randall, is an individual who resides near or within Kalamazoo, Michigan, and is an employee of the Kalamazoo Sheriff's Office.

7. Defendant Sergeant Zimmer is an individual who resides near or within Kalamazoo, Michigan, and is an employee of the Kalamazoo Sheriff's Office.

8. Defendant Deputy Kelly is an individual who resides near or within Kalamazoo, Michigan, and is an employee of the Kalamazoo Sheriff's Office.

9. Defendant Steve Lawrence is an individual who resides near or within Kalamazoo, Michigan, and is the Director of Kalamazoo County Animal Services and Enforcement.

10. Defendant Jim Rutherford is an individual who resides near or within Kalamazoo, Michigan, and is the Health Officer of the Kalamazoo County Health and Community Services Department.

<u>COMMON FACTS</u>

11. Plaintiff prays that this Honorable Court address the age-old question of *quis custodiet ipsos custodes*, "Who will watch the watchmen?"

12. Plaintiff, Benjamin Stanley, is a 34-year-old forced to battle lifelong mental health challenges.

13. When treated as a normal productive member of society, Mr. Stanley has been successful in his battle with mental health challenges; however, Plaintiff relies upon the use of a service animal, which has subjected him to ridicule, harassment, unequal treatment, and retaliation by various government actors and entities. Plaintiff's service dog assists Plaintiff in mitigating his mental health challenges which, without his service dog, substantially limit major life activities. Plaintiff's service dog makes life bearable.

14. Plaintiff resides in the City and County of Kalamazoo and is well-known in the community for his advocacy on behalf of the disabled, his involvement in local politics, and his championship of governmental transparency.

15. Knowing how service dogs have helped Plaintiff cope with his own challenges, Plaintiff has been an unwavering advocate for the rights of service-dog reliant individuals. Plaintiff frequently attends public meetings and contests policies that harm vulnerable individuals, especially those with disabilities. Plaintiff is enthusiastic in his advocacy and does not hesitate to educate people on the laws or invoke his rights under the ADA and the PWDCRA as a way of opening doors for the disabled.

16. Plaintiff uses politics to bring awareness to the plight of the poor and mental health challenged, which has motivated him to run for City Commissioner in 2019, County Commissioner in 2020, Kalamazoo Mayor in 2021, and State Representative in 2022.

17. Plaintiff has long championed governmental transparency; often attending public meetings and livestreaming the proceedings, thus, providing the public with access to events which are rarely broadcast by public entities.

18. Rather than appreciating Plaintiff's advocacy on behalf of the disabled and the general public, Defendants have treated Plaintiff's work, and Plaintiff himself, with scorn.

19. Defendants have treated Plaintiff's requests for bare minimum compliance with the Open Meetings Act and disability laws as a threat.

20. Defendants have mocked Plaintiff, made false statements and complaints against Plaintiff, and even barred Plaintiff from County property in retaliation for his advocacy for service animals and the disabled.

21. Despite Plaintiff making every effort to work with Defendants and his pursuit of existing lawful avenues for change, Defendants have repeatedly bullied, harassed, threatened, retaliated against, and targeted Plaintiff.

4

22. Among other things, County employees have threatened, handcuffed, and arrested Plaintiff, prohibited Plaintiff from accessing County services and buildings, and prevented Plaintiff from receiving service dog tags. The County's actions have threatened, and continue to threaten, Plaintiff's safety and have created an intimidating and antagonistic environment in all County settings.

23. In the years that Plaintiff has been accompanied by a service dog, he has also faced endless harassment, bullying, threats, and refusal of entry as a result of the County's inability to protect him by enforcing service dog laws.

24. Countless venues, including but not limited to courts, churches, parks, restaurants, grocery stores, libraries, etc., have denied Plaintiff entry because of his service dog. Many of these venues and establishments have failed to accommodate Plaintiff because they rely on the County's unlawful guidance on service dog laws and the refusal of the County to enforce these laws.

25. Based on its clearly wrongful interpretation of the law, the County has refused Plaintiff's many requests for service dog tags that would allow him to verify his status to business owners, etc. and thereby allow him to accomplish substantial life tasks throughout the day, like shopping, worshiping, and eating. His service dog, which was meant to assist him, is instead a "Scarlet Letter" to businesses, who shun Plaintiff because of the County's refusal to follow the law. This rampant unlawful discrimination over the years motivated Plaintiff to seek the help of the Sheriff's Office in enforcing service dog laws.

26. Plaintiff requested the Sheriff's Department enforce MCL 750.502c, which makes it a misdemeanor for a place of public accommodation to deny entry to a person with a disability who uses a service dog. The Sheriff's Department refused.

27. Plaintiff's advocacy for those with disabilities caused the Sheriff's Department and its employees to become hostile towards Plaintiff.  Tensions caused the Sheriff's Department and its employees to abuse Plaintiff rather than protect him, most egregiously by handcuffing him and placing him in a police car, alone, without his service dog, without heat, for an hour in 17-degree Fahrenheit weather in January 2022.

28. Plaintiff begs this Honorable Court to enforce the laws of this land and end this abusive and discriminatory behavior that has persisted year after year.

<u>DEFENDANTS SHERIFF'S DEPARTMENT AND OFFICERS:</u>

29. Plaintiff incorporates the previous paragraphs as if contained herein.

30. On or around January 5, 2022, Plaintiff entered the Kalamazoo County building at 201 W. Kalamazoo Ave to obtain a copy of an affidavit of identity from the clerk's office in the building.

31. Plaintiff had been in the building the night before to attend a county commission meeting, maskless, without any issues.

32. Plaintiff had also previously spoken with the Undersheriff and the County Health Director about the face mask policy, who told him masks were only a recommendation.

33. However, on his way into the County Office the next day to pick up the affidavit, Plaintiff was stopped by Deputy Randall, who told him to wear a mask.

34. Plaintiff informed Deputy Randall that he had been at a county commission meeting the night before, in the same building, without a facemask and it had not been an issue.

35. Deputy Randall directed Plaintiff to the building's door, which had the mask policy posted.  The policy stated the wearing of a mask was a recommendation and not a requirement.

36. Deputy Randall demanded Plaintiff wear a mask for no other reason than to harass Plaintiff in retaliation for his advocacy.

37. Plaintiff explained his position to Deputy Randall, left the conversation, and went into the clerk's office to conduct his business.  Deputy Randall took no action at that time.

38. After leaving the office, Plaintiff, tired of being harassed, stopped by Deputy Randall's desk to request his Employee Identification Number (EIN) (the Kalamazoo County equivalent of a badge number).

39. Plaintiff asked Deputy Randall for his name and EIN two times and was refused.

40. When making this lawful request for an EIN, Plaintiff, who was 5'4' and 140lbs, was unarmed and was not a physical threat to Deputy Randall, who was almost 6'0'' and at least 200 pounds.  While it should go without saying, Plaintiff was also not a danger to himself.

41. Despite there being no threat, Deputy Randall leaped to his feet, charged around the desk, physically assaulted Mr. Stanley, handcuffed him, and effectuated an arrest.

42. Deputy Randall marched Plaintiff outside the building, and placed him forcefully into the back of a cold Sheriff's cruiser, without double locking the handcuffs.

43. ***Plaintiff's service dog was then taken to an unknown location, out of Plaintiff's sight and control, causing Plaintiff significant damage which manifests itself as physical harm to this day.***

44. Deputy Randall's actions violated Plaintiff's civil rights.

45. Deputy Randall's actions were a direct result of Defendants' policies of harassment, threats, retaliation, and targeting against Plaintiff.

46. It was approximately 3:00 PM on January 5, 2022, during a "winter storm warning," when Deputy Randall placed the restrained and handcuffed Plaintiff in the back of the Sheriff's cruiser.  Plaintiff was not dressed for the harsh Michigan winter, as he had not expected to be outside for a long period of time when he went to the County building to conduct his business.

47. Upon information and belief, there were cameras in the parking lot where Plaintiff was being held.

48. Deputy Randall never told Plaintiff why Plaintiff was being handcuffed and arrested and Plaintiff had no idea how long he was going to be restrained against his will.

49. Because Plaintiff's hands were handcuffed behind his back, without double-locking the handcuffs, when Plaintiff was placed in the cruiser the handcuffs closed on his wrists, causing Plaintiff unnecessary pain and physical harm.

50. The temperature in Kalamazoo was 17 degrees Fahrenheit/minus 8 degrees Celsius. Experiencing extreme anxiety and fear, Plaintiff was alone and without his service dog during this time, sitting in the back of the Sheriff's cruiser.

51. Plaintiff sat in the car without heat until Deputy Randall came back to turn the car on, but, notably, did not turn on the heat.  After Deputy Randall turned on the car, the radio also came on.  He said nothing to Plaintiff, and then left the Plaintiff alone again, handcuffed and shaking in the back of the cruiser.  Plaintiff heard on the radio that there was a winter storm warning in Kalamazoo, which concerned him, as he did not know how long he would be in the unheated car in his light coat.

52. Plaintiff suffered damages, both physical and mental, due to Defendants' abhorrent actions, which stemmed from Defendants' unwritten (but highly enforced) policy of

harassing, punishing, and retaliating against Plaintiff for his advocacy on behalf of those with disabilities and his demands for governmental transparency.

53. Plaintiff heard an officer over the radio ask whether Deputy Randall intended to bring Plaintiff inside, as they had no more room in the jail.  Deputy Randall still did not come to retrieve Plaintiff from the vehicle.

54. At 3:55 PM, a Sheriff's Sergeant came out, unhandcuffed Plaintiff, and released him from the car.  Plaintiff was never told why he was arrested and charges were never filed against Plaintiff.

55. After his release, Plaintiff walked past Deputy Randall to retrieve his service dog. Without any provocation from Plaintiff, Deputy Randall asked if Mr. Stanley "was coming back for another one?"

56. Deputy Randall's actions were intentional and calculated to cause pain and harm in order to deter Plaintiff from advocating for his rights.

57. When Plaintiff was reunited with his service dog, Maize, she was notably stressed and traumatized.  Before this incident, there was utter trust between Maize and Plaintiff. Afterwards – and to this day – Maize has not been the same.

58. After the incident, Plaintiff discussed this abuse with the Sheriff's department.  Plaintiff was told that he could not ask officers for their EIN twice, as it was seen as "harassment," which was the fabricated basis for his detention and restraint in a sub-freezing cruiser against his will.

59. This is not the only time that Plaintiff has had his rights violated.  The Sheriff's Department instituted a policy which prevented Plaintiff, and only Plaintiff, from filing formal complaints against the abuse that Plaintiff has suffered at Defendants' hands.

60. For example, on or around June 10, 2021, Plaintiff attempted to enter the Sheriff's Office with his service dog and was denied entry.  Plaintiff spoke with Deputy Kelly over the intercom.  Deputy Kelly denied Plaintiff access to the Sheriff's Office due to Plaintiff's disability and his use of a dog.

61. Deputy Kelly's actions were in violation of State and Federal law, including, but not limited to, the PWDCRA.

62. After the incident with Deputy Kelly, Plaintiff attempted to submit a complaint at the Sheriff's Office because of Deputy Kelly's ADA and PWDCRA violation.  The Sheriff's Office prevented Plaintiff from filing a complaint.

63. On or around October 8, 2021, Plaintiff asked Sergeant Zimmer, a Sheriff's Deputy, if he could file a formal complaint regarding being denied entry into a County building with his service animal.  Sergeant Zimmer refused to allow Plaintiff to file a formal written complaint.

64. Plaintiff asked to file a complaint against Sergeant Dziedzic, to which Sergeant Zimmer, beginning an extensive and purposeful obstruction, replied he would get his Lieutenant. Instead, approximately 10 to 15 minutes later, Sergeant Zimmer told Plaintiff that he could make a verbal complaint, and that the Sergeant would type it up afterwards.

65. Plaintiff, knowing that Sergeant Zimmer would never process a "verbal" complaint, expressed his desire to instead fill out the complaint form himself.  Sergeant Zimmer then told Plaintiff he would grab the form.  Several minutes later, Sergeant Zimmer told Plaintiff he did not have access to a printer and Plaintiff left frustrated.

66. Finally, seeing that he was never going to have his lawful rights vindicated, on or around October 8, 2021, Plaintiff made a handwritten complaint detailing the above allegations and submitted the complaint to the front desk at the Sheriff's Office.

67. Based on information and belief, Defendant Sheriff's Office never processed Plaintiff's complaint.

68. Sheriff's department employees have, with the full knowledge of the Sheriff and Undersheriff, prevented Plaintiff from entering County buildings, making legitimate criminal complaints, running for public office by denying him access to the County clerk, and enjoying the rights normally afforded to those who do not require a service animal.

<u>DEFENDANTS ANIMAL SERVICES AND ENFORCEMENT DEPARTMENT, STEVE LAWRENCE, JIM RUTHERFORD, BOARD OF COMMISSIONERS, CHAIR OF THE BOARD OF COMMISSIONERS:</u>

69. Plaintiff incorporates the previous paragraphs as if contained herein.

70. For several years and continuing to the present time, the County has denied Plaintiff's request for service dog tags because he did not have identification for his service dog.

71. Plaintiff is not required under the law to maintain service dog identification.  Michigan and federal law expressly make service dog identification voluntary.  Animal Services also required payment for service dog tags, in violation of law.

72. Plaintiff raised his concerns with Animal Services and noted that service dog identification is voluntary, and that Animal Services could not charge for replacement tags for service dogs under the law.

73. Animal services repeatedly ignored Plaintiff's assertion of his lawful rights, thereby depriving him of the ability to cope with his disability and complete vital day-to-day

tasks, since Plaintiff was barred entry to many public establishments because he did not have service dog identification.

74. On several occasions, Plaintiff sought service dog tags from Defendants Animal Services, Mr. Lawrence, and Mr. Rutherford.

75. On June 28, 2020, Defendant Lawrence refused Plaintiff's request for service dog tags, in violation of law, because Defendant alleged Plaintiff did not have a qualifying disability.

76. Several months later, Plaintiff sought to discuss his concerns regarding service dog policies with Defendants Lawrence and Rutherford in Animal Services.

77. Plaintiff was not alone in being denied service tags, many people with disabilites were denied service dog tags for their legitimate service dogs because the County unlawfully misstated the law.

78.  Plaintiff asked hypothetically if he were to donate money to cover the costs of tags for those people who were denied, if Animal Services would stop making the process so difficult for those with service dogs.

79. Apparently frustrated with Plaintiff pressing him on his right to service dog tags as a disabled person, Steve Lawrence called Township police on Plaintiff.  Lawrence told the Township Police that Plaintiff made him feel "unsafe" and that Plaintiff was trying to bribe him.

80. Lawrence's false police report caused Plaintiff to fear that he might be arrested, which inhibited the exercise of his rights under the PWDCRA and the Michigan and Federal Constitutions.

81. Shortly after, Plaintiff submitted a Freedom of Information Act (FOIA) to the County in frustration at the continuing unlawful denial of his service dog tags.

82. In response to this FOIA submission, Defendant Rutherford subsequently reported Plaintiff to the Sheriff's Office and personally called Plaintiff to inform him of the report, simply to intimidate Plaintiff.

83. Defendant Rutherford's actions were malicious, knowingly false, and with the intent to inhibit Plaintiff's civil rights, his advocacy for the disabled, and his Constitutional rights.

84. Plaintiff also applied to be on the County Animal Service Board in the hopes he could change how the County enforced service dog laws.

85. The Board had multiple vacancies several years in a row.

86. Plaintiff frequently brought up the issue of vacancies at Board meetings.

87. When Plaintiff applied to be on the Board to fill a vacancy, he made it clear he wanted to be on the Board to advocate for the rights of people with disabilities who needed service dogs, as the County had not fully recognized the rights of disabled people with service dogs.

88. In retaliation for Plaintiff's assertion of his rights and his advocacy on behalf of those with disabilities, the Board held a meeting over a year later simply to deny Plaintiff the ability to fill a still-vacant seat.

89. The Board's actions were in violation of Plaintiff's rights, the First Amendment, and the PWDCRA.

<u>DEFENDANT SHERIFF'S PUBLIC RECORDS DIVISION:</u>

90. Plaintiff incorporates the previous paragraphs as if contained herein.

91. Since he was abused repeatedly by several law enforcement officers, Plaintiff has submitted several requests to Defendant's Public Records division to review policies and incidents related to County law enforcement officers.

92. Defendant Public Records Division rejected Plaintiff's requests for frivolous and unlawful reasons, such as paper size and not making a request in the form of a "question," in retaliation for Plaintiff's advocacy and to prevent Plaintiff from acting on his own behalf and that of others to address violations of the PWDCRA.

COUNTS

COUNT 1: Violation of the Fourth Amendment Protection Against

Unreasonable Searches and Seizures

93. Plaintiff incorporates the pervious paragraphs as if contained herein.

94. Under 42 U.S.C. § 1983, a person acting on behalf of the State who causes a citizen of the United States to be deprived of any rights, privileges, or immunities secured by the Constitution, shall be liable to that party at law.

95. The Fourth Amendment to the Constitution provides that citizens should be free from unreasonable searches and seizures.

96. A seizure occurs under the Fourth Amendment when physical force is applied to the body of a person with intent to restrain him.

97. Plaintiff was seized within the meaning of the Fourth Amendment when Deputy Randall assaulted and restrained Plaintiff by handcuffing him, marching him outside to the Sheriff's cruiser, and leaving him inside the vehicle in sub-freezing weather.

98. This arrest was made without probable cause, as Plaintiff was unarmed, posed no threat to Deputy Randall, and was making a lawful request for Deputy Randall's EIN.

99. No charges were ever filed against Plaintiff and Plaintiff was never told why he had been restrained in handcuffs in a freezing cold cruiser.

100.    Deputy Randall violated Plaintiff's right to be safe against unreasonable seizures and from excessive force.

101.    Plaintiff suffered severe emotional distress and both mental and physical damages from this incident.

<u>COUNT 2: Violation of the Fourth Amendment Protection<br>Against Excessive Force by Officers</u>

102.    Plaintiff incorporates the previous paragraphs as if contained herein.

103.    The Fourth Amendment protects citizens against use of excessive force by officers.

104.    The necessity of force used by an officer is determined by considering if it was objectively reasonable in light of the facts and circumstances confronting them.

105.    Deputy Randall handcuffed and arrested Plaintiff after Plaintiff asked for his EIN.

106.    Deputy Randall then left Plaintiff handcuffed in an unheated car for around an hour during a winter storm warning, after which another officer released him.

107.    Plaintiff was unarmed, was not being physically threatening to the officer at any time, and was lawfully asking Deputy Randall for his EIN.

108.    No charges were ever filed against Plaintiff.

109.    Excessive force was used against Plaintiff, as Defendants had no objectively reasonable basis for assaulting and handcuffing Plaintiff and placing him alone in an unheated Sheriff's cruiser in sub-freezing weather for an hour.

<u>COUNT 3: Violation of the First Amendment</u>

110.    Plaintiff incorporates the previous paragraphs as if contained herein.

111.    Under 42 U.S.C. § 1983, a person acting on behalf of the State who causes a citizen of the United States to be deprived of any rights, privileges, or immunities secured by the Constitution shall be liable to that party at law.

112.    The First Amendment guarantees citizens the right to freedom of speech.

113.    Plaintiff was exercising his right to free speech by asking the officer for his EIN.

114.    Plaintiff was then arrested by Deputy Randall for this speech.

115.    Plaintiff's speech was further suppressed by the Sheriff's office saying he was not allowed to ask the same question twice or it would be considered harassment.

116.    Plaintiff's speech was lawful and not threatening to Deputy Randall.

117.    Defendants also deprived Plaintiff of his right to free speech by retaliating against him for speaking up in public settings against County policies, thus, intimidating Plaintiff into curtailing his advocacy on behalf of those with disabilities.

118.     Defendants further prevented Plaintiff from exercising his free speech by preventing Plaintiff's complaints against County employees, *his ability to run for office*, his request for service dog tags, and his request for enforcement of service dog laws.

119.    Defendants' actions violated Plaintiff's freedom of speech when it punished his protected speech by, among other things, handcuffing and arresting Plaintiff, denying Plaintiff's right to file a complaint against the government, and denying Plaintiff a seat to fill a vacant seat on the County Animal Services Board.

<u>COUNT 4: Violation of the Fourteenth Amendment</u>

120.    Plaintiff incorporates the previous paragraphs as if contained herein.

16

121.    Under 42 U.S.C. § 1983, a person acting on behalf of the State who causes a citizen of the United States to be deprived of any rights, privileges, or immunities secured by the Constitution, shall be liable to that party at law.

122.    All of the actions taken by Defendants, or those acting on behalf of, or conspiring with, Defendants, and referred to herein, were done by Defendants while acting under color of state law.

123.    Defendants' wrongful act deprived Plaintiff of rights and freedoms guaranteed under the Constitution.

124.    Defendants' wrongful acts deprived Plaintiff of his Fourteenth Amendment right to equal protection under the law and to be free from discrimination based on his disability status.

125.    Plaintiff's equal protection rights were violated when Defendants targeted and discriminated against Plaintiff because of his disability by, among other things, handcuffing and arresting Plaintiff, denying Plaintiff right to file complaints against the government, denying Plaintiff access to file paperwork seeking to run for a political position, and denying Plaintiff a vacant seat on the County Animal Services Board.

126.    Defendants' acts were intentional, malicious, willful, wanton, and in reckless disregard of Plaintiff's constitutional rights.

<u>COUNT 5: False Arrest</u>

127.    Plaintiff incorporates the previous paragraphs as if contained herein.

128.    A false arrest is arrest or imprisonment (1) of a person (2) who is innocent of the charge on which he is arrested (3) by the defendant or at his instigation (4) without legal justification. *Smith v. Twp. of Prairieville*, 194 F. Supp. 3d 658, 671 (W.D. Mich. 2016).

17

129.    On the January 5, 2022, Plaintiff lawfully asked Deputy Randall for his EIN. Plaintiff was unarmed and was not physically threatening Deputy Randall.

130.    Deputy Randall handcuffed and arrested Plaintiff and placed him alone in an unheated Sheriff's cruiser in sub-freezing weather.

131.    Plaintiff was never told why he was arrested, and no legal justification was provided.  The only "justification" Defendants provided was that Plaintiff asked Deputy Randall twice for his EIN.

132.    No charges were ever filed against Plaintiff.

133.    Plaintiff's arrest had no legal justification.

<u>COUNT 6: False Imprisonment</u>

134.    Plaintiff incorporates the pervious paragraphs as if contained herein.

135.    The elements of false imprisonment are (1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the person confined is conscious of his confinement.  *Smith*, 194 F. Supp. 3d at 671.

136.    False imprisonment also requires that the restraint occurred without probable cause to support it.

137.    Plaintiff was confined to the Sheriff's cruiser for about an hour during his January 5 arrest.

138.    Deputy Randall intentionally handcuffed and arrested Plaintiff solely to retaliate against him for requesting Deputy Randall's EIN number.

139.    Plaintiff was handcuffed and placed alone in the back of a Sheriff's cruiser in sub-freezing weather.

140.    Plaintiff was aware of his confinement, as he knew he did not have the ability to leave, did not know why he was arrested, and did not know how long he would be in handcuffed and alone.

141.    Furthermore, there was no probable cause for the arrest since Plaintiff was unarmed, posed no threat to Deputy Randall, and lawfully asked Deputy Randall for his EIN.  The lack of probable cause is further evinced by another County officer releasing Plaintiff after about an hour.

142.    Plaintiff was never charged after the arrest, and was ludicrously told later that asking for the EIN twice constituted harassment justifying this handcuffing and arrest.

<u>COUNT 7: Retaliation and Intimidation.</u>

143.    Plaintiff incorporates the previous paragraphs as if contained herein.

144.    Under MCL 37.1602, no person shall discriminate against another individual because that individual opposed a practice made unlawful under the PDCRA.

145.    Defendants discriminated against Plaintiff by retaliating against him for requesting Defendants enforce and abide by service dog laws.

146.    Defendants further retaliated against Plaintiff for his advocacy on behalf of those with disabilities, his demands for rudimentary governmental transparency, and by intentionally preventing Plaintiff's ability to run for public office.

<u>COUNT 8: Intentional Infliction of Emotional Distress</u>

147.    Plaintiff incorporates the previous paragraphs as if contained herein.

148.    Defendants engaged in retaliatory conduct towards Plaintiff, including, but not limited to, unlawfully handcuffing and arresting Plaintiff without probable cause, preventing and intimidating him from advocating on behalf of those with disabilities,

intentionally refusing to accept Plaintiff's complaints, and repeatedly frustrating Plaintiff efforts to lawfully engage in County services.

149.    The Defendants' conduct was intentional.

150.    The conduct was the cause of Plaintiff's complaint; and

151.    The Defendants' conduct caused Plaintiff severe emotional distress because Plaintiff was denied lawful rights based on his disability that severely hampered critical life activities, took advantage of his vulnerable mental and emotional state by handcuffing and arresting him and placing him into an unheated cruiser in sub-freezing weather, without his service dog, and denied his right to have grievances investigated for government misconduct.

<u>COUNT 9: Conspiracy to Deprive a Person of Rights or Privileges</u>

152.    Plaintiff incorporates the previous paragraphs as if contained herein.

153.    Under 42 U.S.C.  § 1985(3),  "[i]f two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

154.     All of the actions taken by Defendants, or those acting on behalf of, or conspiring with, Defendants, and referred to herein, were done by Defendants while acting under color of state law.

155.     Defendants' wrongful acts were carried out in concert by Defendants in retaliation for Plaintiff demanding equal protection of the laws under the Fourteenth Amendment to the United States Constitution, for exercising his right to free speech under the First Amendment, and for invoking protections under the PWDCRA.

156.     Specifically, Defendants acts together to deprive Plaintiff of his right to Equal Protection of the Laws under the Fourteenth Amendment, his right to free speech under the First Amendment, and for invoking protections under the PWDCRA.

157.     Defendants' acts were conspiratorial, intentional, malicious, willful, wanton, and in reckless disregard of Plaintiff's constitutional rights.

WHEREFORE, Plaintiff, Benjamin Stanley, prays that this Honorable Court order the following:

158.     Award Plaintiff his attorney fees and costs pursuant to 42 USC §§ 1983, 1985, the ADA, and PDCRA.

159.     Find that Defendants violated Plaintiff's Fourth Amendment rights.

160.     Find that Defendants violated Plaintiff's First Amendment rights.

161.     Find that Defendants violated Plaintiff's Fourteenth Amendment rights.

162.     Find that Defendants falsely arrested Plaintiff.

163.     Find that Defendants falsely imprisoned Plaintiff.

164.     Enjoin Defendants from further violations of Plaintiff's rights.

165.     Compensate Plaintiff for all damages incurred.

166.    Apply and award to Plaintiff all appropriate fines and penalties against Defendants

available under the ADA, PDCRA, and other violations of law alleged herein.

167.    Provide any other relief the Court deems fit.



Dated: June 27, 2023                    DELAPORTE LYNCH, PLLC

By:  _____
                                        Eric D. Delaporte (P69673)
                                        210 State St., Suite B
                                        Mason, MI 48854
                                        (517) 999-2626
                                        Eric@DelaporteLaw.com

## **JURY DEMAND**

Pursuant to FRCP 38, Plaintiff Benjamin Stanley requests that this count and all previous paragraphs incorporated herein be tried by a jury.

Dated: June 27, 2023                    DELAPORTE LYNCH, PLLC

                                        By: _____
                                            Eric D. Delaporte (P69673)
                                            210 State St., Suite B
                                            Mason, MI 48854
                                            (517) 999-2626
                                            Eric@DelaporteLaw.com